1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   AIDA MENJIVAR,                              No. C 06-03086 SI
9            Plaintiff,                         **ORDER RE: DEFENDANTS' MOTION TO**
                                                **DISMISS, MOTION TO STRIKE, AND**
10     v.                                       **APPLICATION   FOR   ORDER**
                                                **EXPUNGING LIS PENDENS**
11  TROPHY PROPERTIES IV DE, LLC, et al.,
12           Defendant.
                                           /
13
14         On September 22, 2006, the Court heard argument on defendants' motion to dismiss, motion to
15  strike, and application for order expunging lis pendens.  Having considered the arguments of counsel
16  and the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART defendants'
17  motion to dismiss and motion to strike, and ORDERS the lis pendens expunged.
18
19                                   **BACKGROUND**
20         Plaintiff Aida Menjivar is a long-term tenant in a building recently acquired and currently
21  managed by defendants Trophy Properties IV DE, LLC, Trophy Properties V, LLC,
22  CITICAPARTMENTS, Inc., Andrew Hawkins, Kathryna Leshay, Ernest Aranda, Dan Molieri, and
23  DOES "Agi" and 1 through 100 inclusive.  Plaintiff alleges that since June 2005, defendants have
24  engaged in a pattern of criminal harassment designed to force plaintiff out of the subject premises, a rent
25  controlled property, in order to re-rent it at market rates.  Plaintiff's First Amended Complaint ("FAC")
26  ¶¶ 36-71.
27         According to allegations in the FAC, the circumstances giving rise to this dispute began on or
28  about May 17, 2005, when defendant Trophy Properties purchased the apartment building in which

United States District Court
For the Northern District of California

plaintiff resides. FAC ¶ 33. On May 18, 2005, defendants issued new Apartment House Rules ("House Rules") and a cover letter explaining the effect of the House Rules. FAC ¶ 36, Ex. B. The House Rules allegedly conflicted with plaintiff's existing lease terms. FAC ¶ 37. On the same day, defendants issued a document entitled "Tenant Information Update," which requested information such as the tenant's name, address, telephone numbers, Social Security number, driver's license number, and employment information. FAC ¶ 36, Ex. B. Defendants allegedly issue the Tenant Information Update for the purpose of identifying "Target Tenants," low-rent tenants who would be vulnerable to removal from their rent-controlled units. FAC ¶¶ 34, 38. The FAC further alleges that between May 18 and June 8, 2005, representatives of defendants contacted plaintiff by telephone and mail, asking plaintiff to sign a new rental contract and consent to the new House Rules, and threatening that she would be evicted if she did not comply. FAC ¶¶ 42, 44. In response to defendants' demands, plaintiff sought the assistance of an agent of St. Peter's Housing Committee. FAC ¶ 45.

Throughout the period giving rise to this suit, plaintiff continued paying monthly rent to defendants. FAC ¶¶ 43, 46, 50. Between June and October, 2005, defendants allegedly accepted plaintiff's rent checks, but failed to cash them. FAC ¶ 46. Ultimately, defendants cashed five of plaintiff's rent checks at once, in an alleged attempt to provoke technical non-payment of rent. FAC ¶ 48. Defendants' alleged harassment of plaintiff by telephone, insisting that she sign a new rental contract and consent to the House Rules, resumed in late October, 2005, and continued throughout November and December, 2005. FAC ¶¶ 49, 57. On November 10, 2005, defendants allegedly sent plaintiff a Notice of Delinquency for a total sum of $1.20, which had accumulated over five months, requesting payment and threatening legal action. FAC ¶¶ 52-53. These Notices were re-sent to plaintiff in December 2005, and January 2006. FAC ¶ 56. On November 22, 2005, defendants issued plaintiff a Notice of Change in Terms of Tenancy, which raised plaintiff's monthly rent, based in part on two allegedly improper "bond pass throughs." FAC ¶ 55.

In January 2006, plaintiff allegedly requested from defendants copies of the new contract and House Rules. FAC ¶ 58. Defendants refused to send plaintiff said copies, insisting that she review the contract and House Rules at their offices. FAC ¶ 59. That same month, plaintiff received a phone call from defendant Agi DOE, offering plaintiff a sum of money in exchange for giving up the apartment.

United States District Court
For the Northern District of California

2

1   FAC ¶ 60.  Plaintiff rejected the offer.  FAC ¶ 61.

2          The allegations also involve a series of improper entries by defendants into plaintiff's apartment.

3   Defendants have entered plaintiff's apartment on three or four occasions since the alleged harassment

4   began.  In November 2005, agents of defendants allegedly entered plaintiff's apartment and threatened

5   plaintiff's grandson that they planned to install video cameras in the apartment because plaintiff had

6   refused to sign a new rental contract and consent to the "House Rules."  FAC ¶ 51.  On February 1,

7   2006, defendants sent plaintiff a "24-Hour Notice of Entry as Actual Purchasers (Civil Code §

8   1954(a)(2))," giving plaintiff notice that defendants would enter the apartment on February 8, 2006, in

9   order "to supply necessary services, to wit, inspection of condition of the premises and testing of the

10  smoke alarm system."  FAC ¶ 62, Ex. E.  Defendants did in fact enter plaintiff's apartment on February

11  8, 2006.  FAC ¶ 63.  Plaintiff alleges that during this entry, defendants took pictures of plaintiff's living

12  room, bathroom, bedroom and personal effects.  *Id.*  Plaintiff also alleges that defendants entered the

13  apartment one day prior, February 7, 2006, in order to test the smoke detector and replace its battery.

14  FAC ¶ 65.  It is unclear whether plaintiff was present during or gave permission for this entry.  The final

15  entry occurred on February 28, 2006, when one of the defendants conducted an inspection of the

16  apartment, during which he took photographs of the apartment.  FAC ¶¶ 71-72.

17         On March 2 and March 17, 2006, defendants issued to plaintiff separate three-day notices to quit

18  for nuisance.  FAC ¶¶ 75, 81.  On March 25, 2006, defendants initiated an unlawful detainer action.

19  FAC ¶ 82.  Defendants subsequently accepted rent payments from plaintiff, thereby forcing defendants

20  to dismiss the unlawful detainer case without prejudice, on or about June 9, 2006.  FAC ¶ 85.

21         Plaintiff filed the instant law suit on May 9, 2006.  Since that time, defendants have again sought

22  inspection of plaintiff's apartment, requesting, through plaintiff's counsel, that plaintiff allow inspection

23  or provide photographs of the current state of the apartment interior.  Plaintiff's counsel denied these

24  requests, upon which defendants, on an *ex parte* basis, sought an order from the Court requiring plaintiff

25  to provide access to or photographs of the apartment (Docket No. 23).  Together with its opposition to

26  defendants' application, plaintiff filed an application for a temporary restraining order (Docket No. 35).

27  The Court denied both applications in its order of July 20, 2006 (Docket No. 40).  Plaintiff subsequently

28  filed a motion for preliminary injunction, seeking to enjoin defendants from "entering Plaintiff's

United States District Court

For the Northern District of California

3

dwelling . . . under the pretext of a 'nuisance,' 'life-safety,' and/or 'fire hazard' inspection." Pl's. Mot. 1:25-2:2 (Docket No. 44).  The Court denied plaintiff's motion on September 7, 2006 (Docket No. 88). Defendants filed the instant motions to dismiss and strike on August 10, 2006.

The circumstances surrounding the current *lis pendens* dispute are as follows.  In July 2006, defendants listed the building containing plaintiff's unit for sale.  Defendants also began, or planned to begin, the process of refinancing the building sometime in August 2006.  On or about August 10, 2006, plaintiff placed a notice of pendency of action (*lis pendens*) on title to the building, and filed a copy of the notice with the Court.  On August 29, 2006, defendants filed the instant *ex parte* application for order expunging lis pendens.

The Court will discuss defendants' motion to dismiss, motion to strike, and application to expunge lis pendens in turn.

## I.      Motion to Dismiss

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings.  *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

quotation marks omitted).

**DISCUSSION**

**A.     First and second causes of action alleging RICO violations**

Plaintiff asserts two claims under § 1962(c) of the Racketeering Influenced and Corrupt Organziations Act ("RICO").   Under this provision, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  In order to state a valid RICO claim under § 1962(c), a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity."  *Jarvis v. Regan*, 833 F.2d 149, 151-52 (9th Cir. 1987) (citations omitted).

18 U.S.C. § 1962(d) makes unlawful conspiracy to violate any of the provisions of § 1962. "[I]f the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained."  *Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997).

Defendants argue that plaintiff has failed to and cannot allege facts sufficient to establish three of the requisite elements of a valid RICO claim, specifically:  (1) racketeering activity; (2) a pattern; and (3) that the activity proximately caused injury to business or property.

**1.     Racketeering Activity**

 "Racketeering activity" is defined by reference to specific crimes and statutes.  18 U.S.C. § 1961(1).  Plaintiff here asserts 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) as the predicate acts of racketeering activity underlying the first and second causes of action.  The standards for mail fraud and wire fraud are essentially identical and will be discussed together.  To demonstrate the predicate acts of mail and wire fraud, plaintiffs must show a scheme to defraud, involving use of United States wires or mail, with the specific intent to defraud.  *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999).  Mail or wire fraud includes "any scheme to deprive

United States District Court

For the Northern District of California

another of money or property by means of false or fraudulent pretenses, representations, or promises." *Carpenter v. United States*, 484 U.S. 19, 27, 108 S. Ct. 316, 321 (1987). "The elements of mail fraud are that (1) the Defendant made up a scheme or plan for obtaining money or property by making false statements; (2) the Defendant knew the statements were false; (3) the statements were of a kind that would reasonably influence a person to part with the money or property; (4) the Defendant acted with the intent to defraud; and (5) the Defendant used, or caused to be used, the mails to carry out the scheme." *United States v. Marconi*, 899 F. Supp. 458, 461 (C.D. Cal. 1995).

Claims of mail and wire fraud are subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b), which provides, in relevant part, that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Therefore, in addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading." *Yourish v. California Amplifier*, 191 F.3d 983, 993 & n.10 (9th Cir. 1999). These requirements can be fulfilled by pointing to information that was available to the defendants at the time that the allegedly false statements were made. *See Yourish*, 191 F.3d at 993.

Defendants argue that plaintiff's FAC fails to properly allege a false statement, and fails to properly allege reliance by plaintiff on any such false statements. *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 215 (N.D. Cal. 1994) (dismissing a RICO action where reliance on fraud was not pled). In response, plaintiff argues that the following acts and statements by defendants were false or misleading, for the following reasons, and that such reasons were pled with sufficient particularity.

*Tenant Information Update*: Plaintiff argues that the Tenant Information Update was sent for "the purpose of identifying the Target Tenants" (FAC ¶ 38), who plaintiff identifies as "low-income, non-English speaking, and other long-term rent-controlled tenants of the Building" (FAC ¶ 34), and not for the stated purpose of "collect[ing] basic contact and employment information" (FAC ¶ 128(2)). The Court finds this allegation of fraud appropriately pled. Plaintiff's FAC states the basic facts surrounding the Tenant Information Update, and also simply states why and how defendants' statements about the purpose of the Update were misleading. However, plaintiff fails to allege reliance on defendants' misrepresentation of the purpose of the Tenant Information Update. The FAC does not allege that

6

plaintiff filled out the Update in reliance on defendants' stated purpose, nor does the FAC even allege that plaintiff filled out the Update.

*House Rules*:  As in the case of the Tenant Information Update, plaintiff argues that defendants' stated purpose behind issuing new "House Rules" was fraudulent.  The letter accompanying the House Rules stated that the "House Rules are not to supercede elements of your Residential Tenancy Agreement but moreover to fill in the blanks [sic] were information is not provided."  FAC Ex. B.  The FAC alleges that instead, the House Rules were designed "to cause material changes to [the tenants' lease] agreements."  FAC ¶ 128(3).  Defendants argue that plaintiff's allegations cannot be true because the cover letter to the House Rules stated that "[t]hese house rules are not to supercede elements of your Residential Tenancy Agreement . . . [I]n circumstances whereby in clear legal definition, your Residential Tenancy Agreement and the house rules conflict with one another, the Residential Tenancy Agreement is to be followed."  FAC Ex. B.  While this clause in the cover letter strongly states the facial purpose of the House Rules, it does not negate the allegation that defendants' true purpose behind the House Rules was to materially alter tenants' lease agreements.  The FAC thus sufficiently alleges how defendants' sought to mislead plaintiff as to the purpose of the House Rules.  However, the FAC does not adequately allege that defendants succeeded in doing so.  Nowhere does the FAC allege that plaintiff relied on defendants' misrepresentations regarding the House Rules.  Plaintiff apparently never signed the House Rules.  Plaintiff argues that her reliance constituted of "seeking legal advice to assess the merit of her continued reliance on Defendants' assertions" regarding the House Rules.  Plaintiff's Opp. 11:24-26.  However, plaintiff does not explain what her "continued reliance" consisted of.

*Eviction Threats*:  The allegation contained in paragraph 44 of the FAC, that defendants "informed Ms. Menjivar that if she did not consent to the new contract and House Rules she would be evicted," is not pled with sufficient particularity.  The FAC does not allege why defendants' statement was untrue or misleading.  Plaintiff argues in her opposition to this motion that the "statement was fraudulent because there is no legal authority available for an eviction based on a failure to consent to material changes in a residential lease agreement."  Opp. 6:7-8.  The FAC does not allege, however, that defendants claimed to have the legal authority to evict based on failure to accept the House Rules.  Even assuming that "eviction" infers having the legal authority to evict, the FAC still fails to allege that

7

defendants did not have the legal authority to evict based on failure to consent to the new contract or House Rules. Plaintiff's explanation in the opposition brief cannot remedy the shortcomings of the complaint. Moreover, plaintiff again fails to allege how she relied on the allegedly fraudulent threat of eviction. Plaintiff did not sign a new contract or the House Rules.

*November 2005 Entry*:  Paragraphs 51 and 128(6) of the FAC allege that upon entering plaintiff's apartment in November 2005, defendants represented that they would have to install video cameras in the apartment because plaintiff had failed to sign a new rental contract and consent to the House Rules. The FAC alleges that the "actual reason for making that representation was to induce" plaintiff into signing a new rental contract and consenting to the House Rules. FAC ¶ 6. These allegations are not sufficiently pled, as the "actual reason" stated in the FAC does not appear to conflict with defendants' stated reason for threatening to install video cameras. While claiming that they were "legally authorized" to install the cameras might have been untrue (FAC ¶ 51), there is no allegation in the FAC that defendants were not legally authorized to do so. Moreover, again there is no allegation in the FAC of reliance. The threat did not lead plaintiff to sign a new rental contract or the House Rules.

*Notices of Delinquency*:  The FAC alleges that defendants sent plaintiff a Notice of Delinquency for a total sum of $1.20, which had accumulated over five months, requesting payment and threatening legal action. FAC ¶ 52. Plaintiff's opposition argues that plaintiff in fact owed no such amount, and that the threat of legal action was misleading because such a *de minimus* underpayment is not grounds for legal action. The FAC, however, fails to make these allegations, and again, plaintiff's opposition cannot remedy the shortcomings of the pleadings. Moreover, plaintiff fails to allege any reliance on the allegedly false delinquency notice. The FAC does not allege that she paid the $1.20, nor that she took any other action in reliance on the notice.

*May and June 2005 telephone calls*:  Taken together, paragraphs 42 and 128(4) of the FAC allege that between May 18 and June 8, 2005, defendants repeatedly called plaintiff requesting that she sign a new contract and consent to the House Rules. In doing so, defendants allegedly represented "that the purpose of doing so would be to allow the tenant to continue to maintain possession of the rental unit when the actual purpose of doing so would be [to] allow Defendants to collect information that it could use to recover possession of the rental unit." FAC ¶ 128(4). It is unclear exactly how consenting to the

8

House Rules would allow defendants "to collect information."  However, accepting the allegations as true, the FAC sufficiently alleges how defendants' representations were misleading.  Despite sufficiently pleading the misleading nature of defendants' actions, plaintiff again fails to plead reliance.  Plaintiff does not allege that she ever signed a new contract or consented to the House Rules.

*Failure to cash rent checks*:  The FAC does not sufficiently allege how defendants' failure to cash plaintiff's rent checks between June 2005 and October 2005 was fraudulent.  Plaintiff's opposition argues a theory based on a failure to disclose; that by failing to cash plaintiff's rent checks defendants failed to disclose the material fact that either (1) plaintiff's checks were sufficient, or (2) plaintiff's checks were deficient.  Opp. 7:17-24.  Plaintiff does not provide, however, any legal argument as to the existence of a duty on the part of defendants to disclose these facts.  *See Crayton v. Superior Court*, 165 Cal. App. 3d 443, 451 (1985) ("the generally recognized rule is that absent an existing duty to volunteer information, and notice of such duty, mere failure to disclose does not constitute fraud.").  Moreover, even assuming such a duty exists, it is unclear how cashing the rent checks would have disclosed the sufficiency or insufficiency of the rent payments, especially considering that defendants still issued a notice of deficiency after cashing the rent checks.  Additionally, plaintiff again provides no allegations of reliance on defendants' failure to timely cash plaintiff's rent checks.

*Notice of Change in Terms of Tenancy*:  Paragraph 55 of the FAC alleges that on November 22, 2005, defendants issued a "Notice of Change in Terms of Tenancy," which raised plaintiff's monthly rent to $932.07, including small increases for two bond "pass-throughs."  The FAC alleges that the Notice "misrepresented that [the bond pass-through] charges were authorized by law."  FAC ¶ 55.  The complaint thus adequately pleads that the Notice was fraudulent:  it represented that the bond pass-throughs were authorized by law when in fact, they were not.  Here, plaintiff successfully pleads reliance as well.  The FAC alleges that "[r]elying on Defendants' assertions that the amounts were legally permitted and proper, Ms. Menjivar began paying the additional amounts requested."  *Id.*

*Refusing to provide Spanish language translations of documents*:  The FAC alleges that defendants failed to provide plaintiff, upon her request, with a Spanish language translation of the new contract they wished her to sign, and only allowed her to review the contract at defendants' offices.  FAC ¶¶ 58-59.  Plaintiff argues that these actions were false and misleading because the California Civil

9

Code requires such translations be provided, California law provides for "independent review," and "[d]efendants' refusal to provide such documents . . . deprived Ms. Menjivar of the opportunity to independently review the material provisions of the House Rules in a language she more readily understood." Opp. 8:10-16.  While defendants' actions may have deprived Ms. Menjivar from fully understanding the documents, and while such translations may be required by California law, nothing in the FAC or plaintiff's brief suggests that defendants' actions were misleading or fraudulent. Furthermore, again the FAC fails to allege how plaintiff relied on defendants' allegedly fraudulent statments.

*Agi DOE phone call*:  Plaintiff argues that the January 2006 phone call from Agi DOE to plaintiff, offering plaintiff money to vacate the premises, was false and misleading "in that defendant intentionally omitted to reveal to Ms. Menjivar the material fact that the financial implication of surrendering possession of the rent-controlled Subject Premises would have far outweighed the financial 'benefit' of accepting defendant's offer."  Opp. 8:20-23.  The FAC, however, fails to make such allegations, and it is unclear that such allegations would constitute fraud even if included in the FAC. Moreover, plaintiff fails to allege reliance.  Plaintiff did not vacate her apartment, nor did she take any other action in reliance on the phone call.

*Notice of Entry*:  Plaintiff's FAC alleges that defendants sent her a notice of entry which stated that defendants would enter her apartment on February 8, 2006 in order to "supply necessary services, to wit, inspection of condition of premises and testing of the smoke alarm system."  FAC ¶ 62, Ex. E. The FAC alleges, however, that defendants "actual purpose of doing so" was "to allow Defendants to enter and photograph the tenants' rental unit [gathering evidence] that Defendants could then use, or attempt to use, in separate legal proceedings to evict the tenants in an effort to recover possession of the unit and raise the rent to market rates."  FAC ¶ 128(5).  The FAC thus states an allegedly false motive and the true motive underlying it.  Defendants argue that there is no allegation of any false statement in the Notice; that the Notice stated defendants would enter the apartment to conduct an "inspection of condition of the premises and testing of the smoke alarm system," and "[t]hat is what Defendants did - they entered the apartment after giving notice, inspected it, and found a nuisance." Def. Br. 8:2-7 (citing FAC ¶ 62-64, Ex. E).  The motive the Notice gave, however, was not merely to conduct an "inspection

United States District Court

For the Northern District of California

of condition of premises," but was "to supply necessary services, *to wit*, inspection of condition of the premises and testing of the smoke alarm system." FAC, Ex. E. Reading all reasonable inferences in the plaintiff's favor, the represented motive was apparently an inspection related to the supply of necessary services and the smoke alarm system, not a general inspection. The stated motive thus differed greatly from the alleged true motive, and that difference is sufficiently stated in the FAC.

With regard to the Notice of Entry, the FAC sufficiently pleads reliance. Paragraph 63 states, "Ms. Menjivar and Mr. Fiske relied on Defendants' assertion that they would enter the Subject Premises on February 8, 2006 for the purpose of inspecting and testing the smoke alarm system. Ms. Menjivar did not object to Defendants' entry based on that reliance."

*Entry on February 28, 2006*: Plaintiff argues that defendants' failure to provide notice of a subsequent entry into the apartment on February 28, 2006 "was fraudulent" based on a "failure to disclose" the "material fact that [defendants] intended to enter the Subject Premises." Opp. 9:13-19. Again, plaintiff provides no argument as to any duty on the part of defendants to notify plaintiff of the entry, and it is difficult to conceive how such failure misled or otherwise defrauded plaintiff. Furthermore, the FAC does not allege that plaintiff relied on defendants' failure to provide advance notice of an entry.

*Three Day Notices to Quit*: Paragraph 128(7) of the FAC alleges that the three day notices to quit sent to plaintiff were fraudulent because they represented "that the grounds stated in those notices would be sufficient to allow Defendants to legally recover possession of the tenants' rental unit in a legal proceeding when the actual purpose of doing so would be to allow Defendants to intimidate, harass or otherwise coerce the tenants into surrendering possession of their rental units to avoid expensive litigation with unknown consequence and so that Defendants could recover possession of the unit to raise the rent to market rates." While plaintiff here alleges defendants' motive for issuing the notices, plaintiff does not allege that the grounds for eviction given in the notices would not be legally sufficient, or that the notices were otherwise misleading. This allegation is therefore inadequate.

*Unlawful Detainer action*: In her opposition, plaintiff argues that the unlawful detainer action alleged that plaintiff's apartment constituted a "nuisance," when in fact it "never constituted a nuisance." Oppo. to Mot. to Dismiss 10:7. The FAC, however, fails to make these allegations. Plaintiff

**United States District Court**

For the Northern District of California

also argues that "Defendant failed to disclose that its actual purpose in filing the unlawful detainer against Ms. Menjivar was to cause her to voluntarily vacate the Subject Premises rather than face the time, effort and expense of defending herself in that action." *Id.* 10:8-10.  The purpose of filing an unlawful detainer action is to force a tenant to vacate.  The distinction plaintiff attempts to make is completely immaterial.  Moreover, there is no allegation of reliance.

*Failure to provide copies of the Three Day Notice to Quit to the San Francisco Rent Board*:  The FAC does not specify how defendants' alleged failure to provide the San Francisco Rent Board with the above-mentioned Three Day Notices to Quit misled or otherwise defrauded plaintiff.  Plaintiff argues that "[d]efendants' failure to disclose that material fact to Ms. Menjivar was misleading because Defendants knew Ms. Menjivar would rely on the provisions of the San Francisco Rent Ordinance requiring Defendants to provide such copies to the Rent Board for her protection."  Opp. 10:1-4.  It is unclear to what "material fact" plaintiff is referring, and nowhere does the FAC allege that plaintiff would rely on the Rent Ordinance, nor that defendants knew of her reliance.  Furthermore, there is no allegation that plaintiff somehow relied on defendants' failure to provide the San Francisco Rent Board with copies of the notices to quit.

*Accepting rent payments*:  The FAC alleges that despite their attempts to evict plaintiff, defendants continued to accept plaintiff's rent checks, and that doing so "was an intentional act designed to mislead Ms. Menjivar into believing that Defendants had ceased their efforts to evict her for nuisance and/or was designed to prevent her from taking action to prevent those efforts."  FAC ¶ 78.  Plaintiff fails to allege any reliance on defendants' acceptance of plaintiff's rent checks.

In conclusion, plaintiff has sufficiently plead fraud and reliance with respect only to the Notice of Entry and the Notice of Change in Terms of Tenancy.

**2.    Pattern Requirement**

A pattern of racketeering activity requires the commission within a ten year period of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1).  These acts must be related and must amount to, or threaten the likelihood of, continued criminal activity.  *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S. Ct. 2893, 2899 (1989).  In the Ninth Circuit, cases which allege

United States District Court

For the Northern District of California

only one scheme, perpetrated on one victim, are usually insufficient to establish a pattern. *See e.g. Sever v. Alaska Pulp Co.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of RICO claims where "although [plaintiff] alleges a number of 'acts,' [defendant's] collective conduct is in a sense a single episode having the singular purpose of impoverishing [plaintiff], rather than a series of separate, related acts," and pointing to the importance of the fact that "there was but a single victim involved."); *Jarvis v. Regan*, 833 F.2d 149, 153-54 (9th Cir. 1987) (affirming dismissal of a RICO claim where the alleged pattern consisted of three acts of mail and wire fraud committed by legal aid organizations in obtaining a single federal grant); *Schreiber Distrib. Co. v. ServWell Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (affirming dismissal of RICO claims where alleged pattern consisted of fraudulently obtaining a single shipment of goods).  In one of the few single-victim cases where the Ninth Circuit found a pattern, the predicate acts "did pose a threat of continuing activity because they covered up a whole series of alleged kickbacks and receipts of favors, occurred over several months, and in no way completed the criminal scheme." *Sun Savings and Loan Assoc. v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987).  The court in *Dierdorff* distinguished the *Schreiber* case in which the "two predicate acts . . . did not pose a threat of continuing activity because they furthered the diversion of a single shipment of goods and appear to have occurred at nearly the same time, and because once those acts were complete, defendant had no further need to commit predicate acts." *Id.* (citing 806 F.2d at 1393).

As discussed above, plaintiff has adequately alleged only two predicate acts.  Plaintiff is the only alleged victim of those two acts.  This case therefore hews much more closely to the *Schreiber* line of cases than the *Dierdorff* case.  There is only one victim in this case, one scheme (to remove plaintiff from her apartment), and once the scheme is complete, defendants will have "no further need to commit predicate acts." *Id.* Even if all of plaintiff's allegations of fraud, discussed above, had been adequately pled, this finding would hold true.

Plaintiff argues that "this action is far from a case involving a single victim and a single goal," and in support submits a Request for Judicial Notice ("RFJN") in connection with its opposition, requesting that the Court take notice of three allegedly similar complaints filed against defendants in other cases.  Opp. 15:18-19.  The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.  But a court may not take judicial

notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citations omitted).  The Court thus takes judicial notice of the fact that the three complaints attached to the RFJN exist, and were filed, but cannot take notice of any of the facts alleged within those complaints, as such facts are "subject to reasonable dispute."  The requirement that the Court take all of the complaint's allegations as true does not extend to other parties' complaints attached to a RFJN.  *See Harper v. Poway Unified School District*, 345 F. Supp. 1096, 1102-03 (S.D. Cal. 2004) (finding it "inappropriate, on motion to dismiss under Rule 12(b)(6), to take judicial notice of a complaint filed in another court without any indication as to the disposition of the allegations contained therein and with no agreement between the parties as to the truth of the facts alleged.").

The Court therefore finds that the allegations of the FAC are insufficient to establish a pattern of racketeering activity for purposes of a RICO claim.

### 3.     Injury

Though plaintiff's failure to adequately allege a pattern of racketeering activity is sufficient to justify dismissal, the Court will nonetheless also address defendants' argument that plaintiff adequately fails to allege an injury cognizable under civil RICO.  "To maintain a civil RICO claim predicated on mail fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) (citing cases).  The alleged injury must be to the plaintiff's "business or property." *Sedima v. Inrex Co.*, 473 U.S. 479, 496 (1985); *see also Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

Defendants argue that plaintiff fails to allege injury to business or property under RICO.  In response, plaintiff argues several theories of injury.  First, plaintiff suggests that defendants actions intentionally interfered with her contractual rights, which are recognized property interests in California. Opp. 19:20-22 (citing *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)).  Plaintiff also argues that this interference with plaintiff's right to contract caused plaintiff to miss work, and deprived plaintiff "of a right to quiet enjoyment and of the right to privacy in a leased property."  As defendants correctly note, however, the FAC does not allege that plaintiff was injured by interference with her lease agreement.  Furthermore, "[t]he interference with a valid contract between plaintiff *and a third party*

14

is an essential element of a claim of tortious interference with contractual relations." *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1068 (9th Cir. 1998) (citing *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990)) (emphasis added). Plaintiff makes no allegations that defendants interfered with a contract between plaintiff and a *third party*. Plaintiff's argument that defendants interfered with her contractual relations, thereby causing a loss of wages, and loss of right to quiet enjoyment and privacy, is without merit.

Plaintiff also points to the case of *Sepulveda v. Highland Federal Savings & Loan*, 14 Cal. App. 4th 1692 (Cal. Ct. App. 1993), in which a group of tenants brought a RICO claim against their landlord based on sub-standard housing conditions. In that case, the California Court of Appeals found that plaintiffs had sufficiently alleged an injury comprising of "the deprivation of a habitable dwelling and the loss of the money . . . paid in rent, which was excessive because the dwellings were uninhabitable." *Id.* at 1717. *Sepulveda* is distinguishable from the present case. Plaintiff here makes no allegation that defendants' actions made the apartment uninhabitable. *Sepulveda* would perhaps support a case where the landlord's actions caused constructive or actual eviction, however this is not such a case.

Plaintiff also argues that diminution in enjoyment of a leased property is a tangible property interest for RICO purposes. Plaintiff does so by attempting to distinguish the case of *Oscar v. University Students Co-Op Assoc.*, 965 F.2d 783, 785 (9th Cir. 1992), in which the Ninth Circuit affirmed the dismissal of a complaint in which "plaintiffs allege that they have lost the use and enjoyment of their 'property' - that is, their rental interest - as a result of the activities" of defendants. The circuit court held that plaintiff "has not alleged an injury to business or property cognizable under RICO." *Id.* at 785. The court explained:

> [Plaintiff] also claims that she has lost the 'use and enjoyment' of her leasehold interest; she values her apartment less than she otherwise would because [of defendants' acts]. No doubt this is true. This diminution in enjoyment is not a tangible injury to property, however. Whether or not [plaintiff] herself enjoys her apartment less, the bottom line is that the *market* value of [plaintiff's] leasehold interest has not declined.

*Id.* at 787.

Plaintiff here attempts to distinguish this explicit ruling by pointing to a footnote adding that the plaintiff in that case never actually "lost" any use and enjoyment because defendants' conduct was ongoing when the plaintiff moved in. Opp. 20:1-14 (citing 965 F.2d at 787 n.4). As defendants

15

United States District Court

For the Northern District of California

correctly point out, however, the footnote concludes by stating:  "[Plaintiff] thus has not *lost* anything; what she really means is that she *has never had* as much use and enjoyment of her property as she believes she is entitled to.  This is yet another step removed from financial loss."  965 F.2d at 787 n.4.  The ruling did not depend on the fact that the defendants' conduct was pre-existing; that fact merely bolstered the principal finding that loss of use and enjoyment of a leasehold interest "is not a tangible injury to property."  *Id.* at 787.  Thus plaintiff's attempt to distinguish *Oscar*, and claim injury based on a loss of use and enjoyment of her apartment, is unavailing.

Plaintiff's strongest theory of injury is that she incurred attorneys' fees and costs as a result of defendants' actions.  Opp. 19:18-28, FAC ¶¶ 131(1), 134.  Defendants cite a case from the Southern District of Florida for the proposition that standing alone, attorneys' fees do not constitute injuries to business or property.  *See Local 335, Hotel v. Pier*, 599 F. Supp. 761, 765 (S.D. Fla. 1984) ("At most, [attorneys' fees and costs] are incidental damages and do not rise to the type of proprietary damage for which RICO provides compensation.").  However, while the Ninth Circuit has apparently not addressed this issue, there is extensive persuasive authority that attorneys' fees can constitute injury for RICO purposes.  In *Burger v. Kuimelis*, 325 F. Supp. 2d 1026 (N.D. Cal. 2004), for example, the court found that "[l]egal expenses are concrete financial losses, 'not mere injury to a valuable intangible property interest' and are thus recoverable under RICO."  *Id.* at 1035 (quoting *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002).  In so finding, the court relied in part on the explicit rule in the Second Circuit "that legal fees may constitute RICO damages when they are proximately caused by a RICO violation."  *Id.* (quoting *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993).

Using legal fees as RICO damages is, however, subject to one critical limitation:  that the legal fees stem from *prior* legal disputes, and not the lawsuit at issue.  *See e.g. Burger*, 325 F. Supp. 2d at 1026 (plaintiff's claimed RICO injuries were "expenses, including attorneys' fees, in the course of defending itself during the federal government investigation into Counter-Defendants' illegal scheme." (citation omitted)); *Stochastic Decisions*, 995 F.2d at 1167 (discussing "cases in which litigation expenses in a *prior litigation* were allowed as RICO damages when a RICO violation was proved." (emphasis added)).  If legal fees associated with a RICO lawsuit itself could constitute the RICO injury,

16

the injury requirement would cease to have any meaning.

Because of this critical limitation, in this case the FAC's general allegations regarding legal fees are insufficient to support a RICO claim.  At its most specific, the FAC alleges that defendants' fraudulent acts and statements forced plaintiff to:

> [hire] attorneys, at significant cost, to:  defend against Defendants' plan and scheme; to respond to, and defend against, Defendants' fraudulent requests to enter the rental unit; to respond to, defend against, and advise tenants as to their rights to sign or not sign new 'House Rules' or provide information requested by 'Tenant Information Updates'; defend against, and advise tenants of their rights to maintain possession of their rental units despite service of Notices to Quit, or Notices of Delinquency.

FAC ¶ 131(1); *see also* FAC ¶ 134 ("Plaintiff was directly injured by the Defendants' actions in her person and property, in ways that include but are not limited to: incurring significant attorney's fees and costs.").  As discussed above, plaintiff has properly alleged only two predicate RICO acts:  issuing a fraudulent Notice of Entry, and issuing a fraudulent Notice of Change in Terms of Tenancy.  Drawing all inferences in favor of the plaintiff, the FAC has alleged that defendants' allegedly fraudulent acts proximately caused plaintiff to expend attorneys' fees only with respect to the Notice of Entry.  *See id.* ¶ 131(1) ("Defendants' fraudulent requests to enter the rental unit").

However, the only reasonable inference that can be drawn from these pleadings, taken as a whole, is that the "legal fees" allegedly incurred by plaintiff as a result of the Notice of Entry are the fees and costs she has incurred in bringing this lawsuit.  Nowhere in the FAC's fairly detailed factual narrative does plaintiff allege that defendants' actions with respect to the Notice of Entry forced her to retain counsel or otherwise expend legal fees.[1]  In her RICO injury allegation (FAC ¶ 131), plaintiff simply lists the alleged actions complained about, and states that together, they generally forced her to "[hire] attorneys, at significant cost."  As discussed, for legal fees to suffice as RICO damages, they

---

[1]The FAC does make such an allegation with respect to defendants' three day notices to quit, but as discussed above, only the Notice of Entry and Notice of Change in Terms of Tenancy are adequately pleaded predicate RICO acts. *See* FAC ¶ 80 ("Confused by Defendants contradictory and misleading actions, but fully relying on Defendants' assertions that it had valid grounds to seek her eviction from the Subject Premises, Ms. Menjivar was forced to retain the services of Bradshaw & Associates, P.C., at considerably cost, to defend against those efforts and protect her right to remain at the Subject Premises.").  Based on the chronological nature of the FAC's factual narrative, the Court infers that this hiring of counsel occurred sometime between March 3 and March 17, 2006, well after the Notice of Entry (February 1, 2006) and Notice in Change in Terms of Tenancy (November 22, 2005) issues had passed.  *See* FAC ¶¶ 55, 62-64.

must, at the very least, have been incurred prior to the current litigation.  Plaintiff fails to make such an allegation, and therefore fails to adequately plead a RICO injury.

### 4.   Conclusion

The vast majority of plaintiff's allegations do not adequately plead fraud and reliance.  The two allegations which are adequately pled, related to the Notice of Entry and the Notice of Change in Terms of Tenancy, are insufficient to establish a pattern of racketeering activity for purposes of civil RICO.  Even if all the alleged predicate acts had been adequately pled, the Court questions whether they would establish a pattern, as there is only one alleged victim and one alleged scheme.  Moreover, plaintiff has failed to adequately plead a RICO injury.  Because plaintiff has failed to adequately allege these critical elements, the Court must dismiss plaintiff's RICO claims.  To the extent that plaintiff alleges a RICO conspiracy claim, the Court must also dismiss such claim, as a RICO conspiracy claim under 18 USC § 1962(d) requires adequate pleading of an underlying 18 USC § 1962(c) RICO claim.  *See Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000).  The Court therefore dismisses Claims 1 and 2 of plaintiff's FAC, with leave to amend.

### B.   Plaintiff's Third Cause of Action: Fraud

Plaintiff's third cause of action alleges that defendants committed common law fraud.  FAC ¶¶ 135-141.  According to California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage."  *Gil v. Bank of Am., Nat'l Ass'n*, 42 Cal. Rptr. 3d 310, 317 (Cal. Ct. App. 2006).  As in the RICO context, common law claims of fraud must be pled with particularity.  *See* Fed. R. Civ. P. 9(b).

As discussed at length above, the FAC adequately pleads only two instances of fraud, related to the Notice of Entry, and the Notice of Change in Terms of Tenancy.  FAC ¶¶ 55, 62-66, 128(5), 128(8).  Defendants further contend that plaintiff's fraud claim fails because it does not adequately plead damages.  The FAC states the following with regard to fraud damages:

> Ms. Menjivar and those other tenants have suffered resulting damages in ways that include, but are not limited to: incurring significant attorney's fees and costs, being repeatedly deprived of their right to privacy, being repeatedly deprived of their right to

quiet enjoyment of their rental units, and being forced to miss significant portions of work-related activities to respond to said misrepresentations.

FAC ¶ 139.  "Ms. Menjivar has also suffered considerable mental suffering, anxiety, humiliation, and emotional distress."  *Id.* ¶ 140.  The fraud claim also "prays for judgment as follows: A.  For damages in an amount according to proof at trial; B.  For costs of suit; C.  For punitive damages pursuant to Civil Code § 3294; and D.  For such other an further relief as the court deems just and proper."  *Id.* ¶ 141.

Defendants argue that several of these damages are not recoverable under common law fraud, and that they are not properly pled.  While defendants may be correct that some of these alleged damages are not recoverable under common law fraud, the Court finds that damages are nonetheless adequately pled.  In California state courts, all elements of fraud, including damages, must be pleaded with specificity.  *See Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986) (internal quotations and citations omitted).  In district court, however, the complaint need only satisfy federal pleading standards, even as to supplemental state claims.  *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997).  While Rule 9(b) requires pleading the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled with more specificity than required under normal notice pleading.  As such, plaintiff's allegations in the FAC, including "being forced to miss significant portions of work-related activities to respond to said misrepresentations," and "suffer[ing] considerable mental suffering, anxiety, humiliation, and emotional distress," suffice to withstand this Rule 12(b)(6) motion to dismiss.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion in part and DENIES defendants' motion in part.  Plaintiff must file her amended complaint no later than October 20, 2006.

**II.     Motion to Strike**

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any

19

pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because of the limited importance of pleadings in federal matters, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Where the motion involves background or historical material, it should not be granted unless the material is prejudicial to the opponent. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

## DISCUSSION

### A.    Plaintiff's "restitution" claim

Defendants first challenge is to plaintiff's request for "restitution as provided for by Business and Professions Code [section] 17203." FAC 53:8. Defendants argue that plaintiff is not entitled to restitution, as a matter of law, because a restitution claim under the UCL requires allegations that defendants "obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." *Day v. AT&T*, 63 Cal. App. 4th 325, 340 (1998) (emphasis in original). As discussed above, plaintiff makes such an allegation with regard to the Notice of Change in Terms of Tenancy. The FAC alleges that in November 2005, defendants raised plaintiff's rent based in part on two "bond pass throughs," and according to the complaint "misrepresented that such charges were authorized by law." FAC ¶ 55. Plaintiff began paying the allegedly improper rent increases. *Id.* The FAC thus does adequately allege that defendants "obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." *Day*, 63 Cal. App. 4th at 340. The prayer for restitution is thus not inadequate as a matter of law, and the Court therefore DENIES defendants' motion to strike with respect to plaintiff's prayer for restitution.

### B.  The Litigation Privilege

Defendants next argue that a whole category of allegations should be stricken because the

20

alleged acts are privileged under California law, as they were made in anticipation or as part of a judicial

proceeding.  *See* Cal. Civ. Code § 47(b).  The allegedly privileged acts are the issuance of three-day

notices to quit (FAC ¶¶ 75, 81), the filing and dismissal of the unlawful detainer action (FAC ¶¶ 82, 85),

the issuance of notices of delinquency (FAC ¶¶ 52-54, 56), and defendants' filing with this Court of the

*ex parte* application for an inspection order (FAC ¶ 87).

Under California law, the litigation privilege applies to any "publication or broadcast" made in

any "judicial proceeding." Cal. Civ. Code §  47 (Deering's 2006). "For well over a century,

communications with 'some relation' to judicial proceedings have been absolutely immune from tort

liability by the privilege codified as section 47(b)." *Rubin v. Green*, 4 Cal. 4th 1187, 847 P.2d 1044,

1047 (Cal. 1993). "The privilege applies to any communication (1) made in judicial or quasi-judicial

proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50

Cal. 3d 205, 786 P.2d 365, 369, 266 Cal. Rptr. 638 (Cal. 1990). "Although originally enacted with

reference to defamation, the privilege is now held applicable to any communication, whether or not it

amounts to a publication, and all torts except malicious prosecution." 786 P.2d at 368 (citations

omitted). The privilege "protects attorneys, judges, jurors, witnesses, and other court personnel." *Mattco

Forge, Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392, 402, 6 Cal. Rptr. 2d 781, 787 (1992).

While the litigation privilege might justify a motion to strike in the context of a complaint

alleging only state law tort claims, both defendants and plaintiff ignore the critical fact that the FAC

alleges two violations of the federal RICO statutes.  Though the Court here dismisses plaintiff's RICO

causes of action, it does so with leave to amend.  Defendant provides no authority for applying

California's litigation privilege to RICO claims, and indeed, none appears to exist.  "A construction of

the federal statute which permitted a state immunity defense to have controlling effect would transmute

a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the

proper construction may be enforced." *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (holding that

the California litigation privilege did not bar plaintiff's § 1983 claim, due to Supremacy Clause); *see

also Martinez v. California*, 444 U.S. 277, 284, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980) ("It is clear that

the California immunity statute does not control this claim [under § 1983] even though the federal cause

of action is being asserted in the state courts."); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1056 (N.D. Cal. 1998) (any immunity under Cal. Civ. Code § 47(b) is preempted by Fair Labor Standards Act "by virtue of the Supremacy Clause").

However, while the California litigation privilege does not apply to federal RICO claims, the Ninth Circuit has recently decided that the *Noerr-Pennington* doctrine, derived from the *Petition Clause* of the First Amendment, does. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006). "The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of 'the right of the people . . . to petition the Government for a redress of grievances.'" *Id.* at 929 (quoting U.S. Const. amend. I). "Under the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)). "Under the *Noerr-Pennington* rule of statutory construction, [the courts] must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the *Petition Clause* unless the statute clearly provides otherwise." *Id.* at 931.

The *Sosa* case arose from a situation very analogous to Ms. Menjivar's case. The basic facts of *Sosa* are as follows:

> DIRECTV broadcasts television signals via satellite to millions of consumers throughout the United States. . . . By using specialized smart card programming equipment, an individual can gain unauthorized access to DIRECTV's signal, in violation of the Federal Communications Act of 1934, 47 U.S.C. § 605. Such equipment has a number of lawful applications as well, such as implementing secure access to computer networks or controlling physical access to buildings or rooms.
>
> In the past several years, DIRECTV, suspicious that the problem of signal theft had become widespread, . . . . obtained lists of the names and addresses of numerous individuals who had purchased such equipment. DIRECTV obtained no information on the uses to which these individuals were putting this equipment, nor does its satellite technology permit it to determine whether any particular individual is receiving its signal. Using these lists, DIRECTV sent letters to over 100,000 individual purchasers of smart card programming equipment, asserting that DIRECTV had records showing that the recipient had used the equipment to steal its signal, accusing the recipient of violating a federal criminal statute, and threatening civil legal action unless the recipient forfeited the equipment to DIRECTV and paid DIRECTV an unspecified sum to settle its claim. When a number of recipients  contacted DIRECTV by telephone to protest their innocence of the alleged conduct, DIRECTV repeated its accusations and threats to sue. Rather than incur the expense of engaging an attorney to respond, some allegedly innocent recipients, including the three named plaintiffs here, paid DIRECTV thousands of dollars to settle the claims.

*Id.* at 926-27.

In response to DIRECTV's actions, Sosa filed an action in U.S. District Court, "asserting violations of RICO and alleging, *inter alia*, extortion and mail and wire fraud as predicate acts." *Id.* at 927. The district court granted DIRECTV's motion to dismiss, based solely on the *Noerr-Pennington* doctrine. *Id.* The Ninth Circuit, in a lengthy opinion, affirmed dismissal on the same grounds.

In *Sosa*, the Ninth Circuit applied a three-step analysis to determine whether the *Noerr-Pennington* doctrine protected the conduct alleged in the plaintiffs' RICO claim. The court stated:

> [(1)] we must determine whether Sosa's RICO lawsuit burdens DIRECTV's petitioning activities. [(2)] If it does, we must examine the precise petitioning conduct DIRECTV engaged in to determine whether the burden identified may be imposed consistently with the Constitution. [(3)] If there is a substantial question that it may not, we must determine whether RICO or the RICO predicate acts Sosa alleges clearly provide for liability for the conduct at issue. If a reasonable construction of RICO or the predicate act statutes exists that avoids the burden, we will adopt that construction. Only where the statutes clearly provide for the burden posed by the lawsuit will we address whether the statute may be applied to the petitioning conduct consistently with the Constitution.

*Id.* at 932.

The Ninth Circuit found with regard to the first determination, "[a] successful RICO claim would quite plainly burden DIRECTV's ability to settle legal claims short of filing a lawsuit." *Id.* The "RICO suit poses a burden on DIRECTV's communication of the demand letters almost identical to that posed by the Sherman Act claims on the petitioning conduct at issue in *Noerr* and its progeny." *Id.* at 933.

As to the second determination, the court concluded, "for several reasons, that the connection between presuit demand letters and access to the courts is sufficiently close that the *Petition Clause* issues raised by providing a treble-damages remedy [(as RICO does)] with regard to such letters are indeed substantial." *Id.* at 936. In reaching this conclusion, the court held that "the law of this circuit establishes that communications between private parties are sufficiently within the protection of the *Petition Clause* to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Id.* at 935. Furthermore, "in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected." *Id.* at 934 (citing cases).

Not all litigation-related petitions, however, are protected from liability. The Supreme Court has established a "sham litigation" exception to the *Noerr-Pennington* doctrine. *See* 508 U.S. at 60-61. In the anti-trust context, "[t]o establish that a petition to the court is a sham, the party seeking to impose

liability must establish both that the legal claim is objectively baseless and that the suit was brought for an anticompetitive purpose." *Sosa*, 437 F.3d at 938.  Applying this two part test, the Ninth Circuit has identified three particular situations in which this sham litigation exception applies:

> first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

*Id.* at 938 (internal citations and quotations omitted).  In *Sosa*, the Ninth Circuit did not address whether the sham litigation exception applied, because the plaintiff failed to argue that the conduct fell within the exception.  *See id.*

Having found that allowing a RICO claim on the basis of presuit settlement demands would raise serious *Petition Clause* issues, the Ninth Circuit turned to the issue of whether RICO clearly proscribed the acts, or whether RICO could be reasonably construed to avoid raising *Petition Clause* issues.  In order to do so, the Ninth Circuit examined whether the specific RICO predicate acts alleged by plaintiffs, extortion and mail and wire fraud, clearly preclude the conduct complained of.  The court first held that DIRECTV's acts clearly did not constitute extortion under the Hobbs Act.  *See id.* at 939-40.  As to mail and wire fraud, Sosa had alleged violations based on "false representations of fact and law" made in DIRECTVs "demand letters and in telephone conversations."  *Id.* at 940.  The circuit court held that "[i]t is well established . . . that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions and may not be relied upon absent special circumstances not present here."  *Id.*  With regard to the alleged false statements of fact, the court held that such statements cannot amount to fraud "where the sender knows the recipient will not be deceived by the falsehoods."  *Id.* at 941 (citing case).  Thus, for example, "DIRECTV's statements asserting that Sosa had modified smart cards and used smart card programming equipment to access its signal without paying for it cannot constitute mail or wire fraud.  Because these statements concerned Sosa's own conduct, DIRECTV could not have intended that he would be deceived by them and was therefore necessarily lacking in the intent requisite to have committed mail or wire fraud."  *Id.* (citing *Pendergraft*, 297 F.3d at 1209).

24

United States District Court

For the Northern District of California

1    In conclusion, the Ninth Circuit stated:

2        Accordingly, we hold that RICO and the predicate statutes at issue here do not permit
         the maintenance of a lawsuit for the sending of a prelitigation demand to settle legal
3        claims that do not amount to a sham.  Because the demand letters at issue here sought
         settlement of claims against Sosa under the Federal Communications Act, and no sham
4        is claimed, they cannot form the basis of liability under RICO.

5    *Id.* at 942.

6        In this case, defendants object to the inclusion in the FAC of four litigation-related activities:

7    the three-day notices to quit (FAC ¶¶ 75, 81), the filing and dismissal of the unlawful detainer action

8    (FAC ¶¶ 82, 85), the issuance of notices of delinquency (FAC ¶¶ 52-54, 56), and defendants' filing with

9    this Court of the *ex parte* application for an inspection order (FAC ¶ 87).  Of these, all except the filing

10   of the *ex parte* application are alleged by plaintiff to constitute predicate acts of mail fraud.  *See* Oppo.

11   to Mot. to Dismiss 5-10.  The *ex parte* application is alleged to be "a necessary and intentional part of"

12   defendants scheme to recover possession of plaintiff's apartment.  FAC ¶ 87.

13       As to the first consideration, *Sosa* has clearly established that a successful RICO claim "would

14   quite plainly burden" defendants' petitioning activities.  *Id.* at 923.  As to the second consideration, the

15   activity at issue in this case falls even further within the protections of the *Petition Clause* than the

16   prelitigation demand letters at issue in *Sosa*.  An unlawful detainer action is the statutory mechanism

17   by which landowners can recover their premises.  *See* Cal. Civ. Proc. Code § 1159.  A three-day notice

18   to quit is a necessary prerequisite to the filing of an unlawful detainer action where a lease is unexpired.

19   *Id.* §§ 1161(3), 1166(c)(1)(A).  The *ex parte* application for inspection was filed with this Court, in

20   connection with this very lawsuit.  Thus, all three of these actions constitute either "petitions sent

21   directly to the court in the course of litigation," or "conduct incidental to the prosecution of the suit' is

22   protected."  *Sosa* 437 F.3d at 934 (citing cases).  Finally, the notices of delinquency sent by defendants

23   were essentially prelitigation demand letters, just like those sent by DIRECTV in *Sosa*.  As defendants

24   argue: "The delinquency notice was a means to afford plaintiff an opportunity to cure her underpayment

25   of rent before the taking of more formal legal action.  To not include delinquency notices within the

26   privilege would be to discourage the use of such notices and encourage landlords to proceed directly

27   to litigation whenever a term of tenancy is breached."  Mot. to Strike 7:10-13.  Absent allegations that

28   they were connected to sham litigation, all four of defendants' activities thus fall within the protections

of the *Petition Clause*.

Though neither party has briefed the *Noerr-Pennington* issue, it is clear from the pleadings and arguments that the sham litigation exception does not apply in this case. While plaintiff might be able to adequately allege the first prong of the sham test – that the litigation was objectively baseless – she cannot establish the second prong – that the litigation was aimed at an improper purpose. *See* 508 U.S. at 60-61. Plaintiff has repeatedly alleged and argued that defendants' true motive in engaging in these litigation related acts was essentially to coerce Ms. Menjivar into abandoning her lease. This does not constitute an "improper purpose" in the context of sham litigation analysis. The goal of a true sham litigation is to force a result other than that for which the causes of action involved were designed. *See Freeman v. Lasky, Haas, & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) ("the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use of the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon.") (quoting *Prof'l Real Estate Investors*, 508 U.S. at 60-61) (emphasis in original). Here, forcing plaintiff to abandon her tenancy was both defendants' desired result and the result for which these mechanisms were designed. Defendants activities do not fall within the sham litigation exception, and a RICO claim based on these activities therefore raises serious Constitutional questions.

Following *Sosa*, the final step is to determine whether the predicate statutes at issue clearly permit maintenance of a lawsuit based on these four activities, or whether a "reasonable construction of RICO or the predicate act statutes exists that avoids" the burden and the Constitutional questions. 437 F.3d at 932. As in *Sosa*, the alleged predicate acts here are mail and wire fraud.

With regard to the notices of delinquency, the FAC alleges that defendants sent plaintiff a Notice of Delinquency for a total sum of $1.20, which had accumulated over five months, requesting payment and threatening legal action. FAC ¶ 52. As discussed at length above, the FAC makes no allegations regarding the fraudulent nature of the notices. Plaintiff's opposition argues that plaintiff in fact owed no such amount, and that the threat of legal action was misleading because such a *de minimus* underpayment is not grounds for legal action. Plaintiff thus argues that the notices contained both misrepresentations of law and fact. As discussed, the misrepresentations of law are not actionable as

fraud. *See Sosa*, 437 F.3d at 940. While a misrepresentation of fact may constitute mail fraud, plaintiff has failed to adequately make such an allegation. Therefore, as alleged in the FAC, the notices do not constitute mail fraud. If, upon amendment, plaintiff adequately alleges how the notices constituted fraud, the Court will determine whether the notices would violate all reasonable constructions of the mail fraud statute.

As to the three-day notices to quit, paragraph 128(7) of the FAC alleges that they were fraudulent because they represented "that the grounds stated in those notices would be sufficient to allow Defendants to legally recover possession of the tenants' rental unit in a legal proceeding when the actual purpose of doing so would be to allow Defendants to intimidate, harass or otherwise coerce the tenants into surrendering possession of their rental units to avoid expensive litigation with unknown consequence and so that Defendants could recover possession of the unit to raise the rent to market rates." The FAC thus suggests only that the three day notices to quit contained misrepresentations of law. The three day notices of quit are therefore not actionable under the mail fraud statute. *See Sosa*, 437 F.3d at 940.

With respect to the filing and dismissal of the unlawful detainer action, plaintiff argues that the unlawful detainer action alleged that plaintiff's apartment constituted a "nuisance," when in fact it "never constituted a nuisance." Oppo. to Mot. to Dismiss 10:7. Whether the apartment constituted a nuisance is a question of law, and this alleged misrepresentation therefore cannot support a claim of mail fraud. *See Sosa*, 437 F.3d at 940. Plaintiff also argues that "Defendant failed to disclose that its actual purpose in filing the unlawful detainer against Ms. Menjivar was to cause her to voluntarily vacate the Subject Premises rather than face the time, effort and expense of defending herself in that action." *Id.* 10:8-10. The purpose of filing an unlawful detainer action is to force a tenant to vacate. The distinction plaintiff attempts to make is completely immaterial. The unlawful detainer action therefore cannot support a RICO predicate mail fraud claim.

It is not clear from the FAC which claims, if any, the allegation regarding the *ex parte* application is designed to support. As the application was filed in connection with this lawsuit, in this Court, it raises extremely strong *Petition Clause* questions. Though the Court cannot conceive of any way in which the application could serve as the basis for any of plaintiff's claims, due to the inadequacy

27

United States District Court

For the Northern District of California

of the pleadings, it would be premature for the Court cannot apply the full *Noerr Pennington* analysis to the *ex parte* application. The Court will therefore strike this allegation, but allow plaintiff to amend, should she decide it is worthwhile to do so, in order to provide the Court with an adequate basis on which to rule.

In conclusion, a RICO claim based in part upon these four activities would burden activity  that falls within the scope of the *Petition Clause of the First Amendment*. The *Noerr-Pennington* doctrine therefore requires the Court to apply a construction of RICO that would preclude use of these four activities, if there is one. *See Sosa*, 437 F.3d at 942. As discussed above, there is such a construction, at least with respect to the three-day notices to quit, and the unlawful detainer action. Put differently, "RICO does not unambiguously include" these activities "within the scope of conduct it enjoins." *Sosa*, 437 F.3d 942. These activities therefore cannot serve as bases for plaintiff's RICO claim.

As to the *ex parte* application and the notices of delinquency, the Court is unable to determine, due to the inadequacy of the pleadings, whether a construction of RICO exists that would preclude their use, or whether the Court must deny their use on Constitutional grounds. In order to avoid ruling at this time on Constitutional grounds, the Court will stay its decision until plaintiff, should she decide it is worthwhile to do so, provides adequate allegations regarding these two activities.

Accordingly, the Court GRANTS defendants' motion to strike with respect to those allegations related to issuance of three-day notices to quit (FAC ¶¶ 75, 81) and the filing and dismissal of the unlawful detainer action (FAC ¶¶ 82, 85), without leave to amend. The Court GRANTS defendants' motion to strike with respect to the issuance of notices of delinquency (FAC ¶¶ 52-54, 56), and defendants' filing with this Court of the *ex parte* application for an inspection order (FAC ¶ 87), with leave to amend.

**C.      Rent Ordinance Sections 37.10A(c) and 37.10A(g)**

Paragraph 92 of the FAC alleges violations of San Francisco Rent Ordinance sections 37.10A(c) and 37.10A(g). Defendants argue that these Rent Ordinance sections have been ruled unconstitutional and invalid. *See Baba v. Bd. of Supervisors*, 124 Cal. App. 4th 504 (2004) (affirming Superior Court judgment and writ of mandamus barring enforcement of sections 37.10A(c) and 37.10A(g) as facially

1   unconstitutional).   The Court agrees, and GRANTS defendants' motion to strike with respect to

2   plaintiff's allegations regarding San Francisco Rent Ordinance sections 37.10A(c) and 37.10A(g).

3

4       **D.      Attorneys' fees request in connection with Civil Code section 1954 trespass claim**

5           Defendants next request that the Court strike plaintiff's request for attorneys' fees in connection

6   with her fourteenth cause of action for trespass in violation of California Civil Code section 1954. *See*

7   FAC ¶¶ 235-244. Defendants argue that attorneys' fees may only be awarded as part of a trespass claim

8   where the property involved is "under cultivation" or "used for the raising of livestock." Cal. Civ. P.

9   Code § 1021.9.  Plaintiff responds by asserting the "tort of another" theory, established in *Prentice v.*

10  *North American Title Guaranty Corp.*, under which a plaintiff may recover attorneys' fees incurred

11  because "a defendant has wrongfully made it necessary for [the] plaintiff to sue a third person." 59 Cal.

12  2d 618, 620-21 (1963).  In such a case, the plaintiff may recover from the defendant the fees and costs

13  associated with suing the third party. *Id.*

14          Plaintiff argues that "[d]ue to Defendant Molieri's tortious conduct [in trespassing into and

15  photographing the apartment], Plaintiff was forced to bring suit against the other Defendants in order

16  to preserve her right to exclusive use and possession of her home." Opp. 7:17-18. Plaintiff's theory

17  misapplies *Prentice*. As the California Supreme Court clarified, "[t]he rule in Prentice was not intended

18  to apply to one of several joint tortfeasors in order to justify additional attorney fee damages." *Elec.*

19  *Elec. Control v. Los Angeles Unified Sch. Dist.*, 126 Cal. App. 4th 601, 617 (2005).  Based on

20  allegations of the FAC, defendant Molieri's actions did not force plaintiff to take legal action against

21  a "third party," but rather against Molieri's joint tortfeasors. *See* FAC ¶ 18 (Molieri "is, or was at times

22  relevant to this action, agent for Trophy Properties and/or CitiApartment charged with the general

23  management of the Building."); FAC ¶ 21 ("each of the Defendants is, and at all times relevant to this

24  Complaint was, a party to the unlawful activities complained of herein, and has conspired with and/or

25  acted in concert or combination with each of the other Defendants and/or has aided and abetted such

26  other Defendants and/or has acted as an agent for each of the other Defendants with respect to the

27  actions and matters described in this complaint.").

28          The *Prentice* "tort of another" theory therefore does not apply, and plaintiff is not entitled to

United States District Court
For the Northern District of California

29

1   attorneys' fees on this cause of action as a matter of law.  The Court therefore GRANTS defendants'

2   motion to strike with respect to line 20 on page 57 of the FAC.

3

4       **E.      Translation of Materials**

5       Defendants next challenge plaintiff's eleventh cause of action for unfair business practices,

6   pursuant to California Business & Professional Code sections 17200 and 17500.  One of the allegedly

7   unlawful business practices underlying this claim is violation of California Civil Code section 1632,

8   which states in pertinent part that "a translation of the contract or agreement [must be provided] in the

9   language in which the contract or agreement was negotiated."  § 1632(b).  Defendants argue that

10  plaintiff nowhere alleges that defendants negotiated any of the documents at issue in Spanish or any

11  other non-English language, and this claim therefore fails as a matter of law.  Plaintiff responds that

12  "Defendants' tactics run contrary to the spirit and intent of Civil Code § 1632."  Opp. 8:19-20.  Plaintiff

13  provides no authority, however, to support the proposition that § 1632 applies to situations such as that

14  alleged in the FAC.  The Court therefore GRANTS defendants' motion to strike with respect to the

15  allegations of violation of § 1632 and reference of "illegality" in relation to defendants' refusal to

16  provide Spanish translations, contained in paragraphs 59, 107, 208 and 209 of the FAC, with prejudice.

17

18      The Court is not persuaded, however, that all references to plaintiff's requests to have documents

19  translated into Spanish need be stricken.  Those allegations are part of the long series of disputes related

20  to the House Rules and new lease contract which form the basis for this lawsuit.  As such, they provide

21  context and are not wholly irrelevant.  The Court is not convinced that any resulting prejudice to

22  defendants outweighs the value of presenting a complete picture of the dispute. The Court therefore

23  DENIES defendants' motion to strike as to those references to refusal to provide translations which do

24  not specifically allege that such refusal violated § 1632 or was otherwise "illegal."

25

26      **F.      Failure to lodge notices with the rent board**

27      Defendants' final motion to strike seeks to strike from the FAC all allegations related to

28  defendants' failure to comply with San Francisco Rent Ordinance section 37.9(c), which requires that

United States District Court

For the Northern District of California

1   defendants lodge with the Rent Board copies of notices of delinquency and three-day notices to quit.

2   The Court is not persuaded that defendants' alleged failure to provide the Rent Board with such copies

3   in this case lacks any logical connection to plaintiff's allegations.  These allegations might tend to help

4   prove, for example, that defendants intended to force plaintiff out of her apartment through extrajudicial

5   means.  The Court therefore DENIES defendants' motion to strike portions of the FAC alleging a failure

6   to comply with San Francisco Rent Ordinance section 37.9(c).

7

8                                                    **CONCLUSION**

9           For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

10  motion in part, and DENIES defendants' motion in part.  Plaintiff's amended complaint, if any, is to be

11  filed on or before October 20, 2006.

12

13  **III.      Motion to Expunge Notice of Lis Pendens**

14                                             **LEGAL STANDARD**

15          Pursuant to California Code of Civil Procedure § 405.20, "[a] party to an action who asserts a

16  real property claim may record a notice of pendency of action [lis pendens] in which that real property

17  claim is alleged."  The purpose of a lis pendens notice is to provide constructive notice of a pending

18  claim that may affect title or right to possession of the real property described in the lis pendens notice.

19  *See La Paglia v. Super. Ct.*, 264 Cal. Rptr. 63, 66 (Cal. Ct. App. 1989).  The history underlying lis

20  pendens statutes sheds great light on their purpose:

21              At common law the mere existence of a lawsuit affecting real property was considered
               to impart constructive notice that anyone who acquired an interest in the property after
22             the suit was filed would be bound by any judgment in that suit.  To ameliorate the harsh
               effect of the common law rule, Legislatures enacted lis pendens statutes to limit the
23             constructive knowledge of pending claims to those instances where a notice of lis
               pendens was recorded.
24

25  *Id.* (citations omitted).  The principal purpose of the lis pendens statute, therefore, is to protect third

26  parties who might acquire an interest in real property subject to a suit that might affect their interest.

27  A lis pendens notice protects the plaintiff only to the extent that it precludes a future interest holder from

28  claiming lack of notice.

> While the lis pendens statute was designed to give notice to third parties and not to aid plaintiffs in pursuing claims, the practical effect of a recorded lis pendens is to render a defendant's property unmarketable and unsuitable as security for a loan. The financial pressure exerted on the property owner may be considerable, forcing him to settle not due to the merits of the suit but to rid himself of the cloud upon his title. The potential for abuse is obvious. In light of its history as a device designed to protect third parties rather than provide plaintiffs with an unfair advantage in litigation, courts have restricted rather than broadened application of this potentially devastating pretrial remedy.

*Id.* (citations omitted).

In order to guard against potential abuse of lis pendens notices, California lis pendens law provides several safeguards. First, the Code allows lis pendens notice only in actions in which a real property claim is alleged. The court must expunge the lis pendens notice "if the court finds that the pleading on which the notice is based does not contain a real property claim." § 405.31. Section 405.5 defines "Real property claim" as "the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the use of an easement identified in the pleading, other than an easement obtained pursuant to statute by any regulated public utility."

In addition to alleging real property claims, the claimant (party placing the notice of lis pendens) has the burden of establishing the probable validity of those claims. Section 405.32 states that "the court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim."

The Code further protects against abuse of lis pendens by providing that on a motion to expunge, the court "shall" award the prevailing party reasonable attorney's fees and costs incurred in making or opposing the motion, unless the losing party acted with substantial justification, or other circumstances make the imposition of fees and costs unjust. § 405.38.

A lis pendens notice can also be removed by the claimant by executing a notice of withdrawal and having it acknowledged. § 405.50.

## DISCUSSION

**A.      Plaintiff does not have real property claims for the purpose of lis pendens, and the lis pendens notice must therefore be expunged**

United States District Court

For the Northern District of California

Plaintiff provides two theories as to why her claims should be considered "real property claims" within the meaning of Code Section 405.30.  First, plaintiff argues that her RICO claims seek to divest defendants of their property interest in the building.  Second, plaintiff argues that her RICO, unfair business practices, and trespass claims all seek to establish plaintiff's right to quiet enjoyment and therefore also constitute "real property claims" within the meaning of the Code.

Plaintiff argues that her RICO claim could theoretically divest defendants of their interest in the building, and could therefore fit within a stretched meaning of "real property claim" under the Code. The Court does not accept plaintiff's theoretical proposition.  Even if it were correct, however, the purpose, history, and nature of the lis pendens law would not support such a claim.  As discussed *supra*, a lis pendens is designed to give notice to and protect potential future interest holders.  If, as a result of this suit, defendants are forced to divest their interest in the building, such divestment would have no impact on a future buyer, transferee, or mortgage holder.  If, as is allegedly planned, defendants sell the building prior to resolution of the RICO claim, the request for court-ordered divestment would be null. If defendants still own the building upon resolution, and are ordered to divest, the existence of such order would have no impact on any interest except defendants'.

Plaintiff's second theory – that her RICO, unfair business practices, and trespass claims all seek to establish plaintiff's right to quiet enjoyment and therefore also constitute "real property claims" within the meaning of the Code – likewise fails to establish that a lis pendens notice is appropriate in this case.  Plaintiff's claims seek to prevent *defendants* from interfering with plaintiff's right to quiet enjoyment of her apartment.  A court order enjoining *defendants* from harassing or otherwise interfering with plaintiff's quiet enjoyment would have absolutely no impact on the interests of any future, non-party interest holder.  As such, a lis pendens notice is inappropriate and unnecessary.

**B.      The probable validity of plaintiff's "real estate claims" need not be addressed at this point**

Considering the foregoing, the Court does not find it necessary at this point to address the merits of plaintiff's alleged "real property claims."

**C.      Defendants are not entitled to recover reasonable fees and costs associated with this**

**United States District Court**
For the Northern District of California

1    **application**

2         Pursuant to Code Section 405.38, the Court may award defendants, as the prevailing party, their

3    reasonable attorney's fees and costs incurred in making this application, if plaintiff did not act with

4    substantial justification, or other circumstances do not make the imposition of fees and costs unjust.

5    While the Court finds that the lis pendens device was not designed for use in cases such as this,

6    plaintiff's attempt to categorize this case as a dispute over "real property" is not unreasonable.  This is,

7    after all, a landlord-tenant dispute, which falls within the general realm of property law.  The Court

8    therefore finds that plaintiff did not act without substantial justification in filing a notice of lis pendens,

9    and DENIES defendants' request for fees and costs in association with this application.

10

11                                              **CONCLUSION**

12         For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

13   application and orders the lis pendens notice expunged, and DENIES defendants' application for fees

14   and costs.

15

16         **IT IS SO ORDERED.**

17

18   Dated: October 6, 2006                              _____
                                                          SUSAN ILLSTON
19                                                        United States District Judge

20

21

22

23

24

25

26

27

28

34